# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM WESLEY, SR.,** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : |
| | : **3:15-CV-1110** |
| **SIMONA AMERICA INC.** | : **(JUDGE MARIANI)** |
| **t/d/b/a LAMINATIONS, INC.** | : |
| | : |
| **Defendant.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 54) by

Magistrate Judge Martin Carlson, wherein the Magistrate Judge recommends that the

Defendant's Motion for Summary Judgment (Doc. 43) be granted with respect to all of the

Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951, *et

seq.* Plaintiff filed Objections (Doc. 57) to the R&R pursuant to M.D. Pa. Local Rule 72.3 to

which Defendant responded (Doc. 58). For the reasons that follow, upon *de novo* review of

the R&R, the Court will adopt the pending R&R.

### II. ANALYSIS

The Plaintiff brought suit under the ADEA and PHRA alleging that he was

discriminated against because of his age when he was told on June 11, 2014 by

representatives of the Defendant that he was "not needed any more" and that he would be

replaced. (Second Amended Complaint, Doc. 27). The Plaintiff further alleged that he was subjected to a hostile work environment and that on December 28, 2015, he was terminated because of unlawful age discrimination and in retaliation for his having brought the instant lawsuit. (*Id.*, ¶¶ 26, 27, 34, 35).

Plaintiff alleged that he was employed by Laminations, Inc., for 35 years, working as a scrap saw operator (*Id.* at ¶¶ 17,19).

Defendant Simona filed a Motion to Dismiss Plaintiff's Second Amended Complaint on March 24, 2016 (Doc. 28), and, subsequently, Simona filed a Motion for Summary Judgment on August 26, 2016 (Doc. 43).

These Motions were referred to United States Magistrate Judge Carlson for a Report and Recommendation in accordance with 28 U.S.C. § 636. The Magistrate Judge issued his Report and Recommendation (Doc. 54) on November 3, 2016. In the R&R, the Magistrate Judge addressed Plaintiff's claims of disparate treatment under the ADEA, Plaintiff's claim that he was subjected to a hostile work environment because of his age and the Plaintiff's claim that he was retaliated against because of his efforts to invoke his rights under the ADEA by filing a Charge of Discrimination with the EEOC and by instituting the present action.

This Court finds that the Magistrate Judge correctly applied the standard for determining whether summary judgment should be granted with respect to Plaintiff's claims. Further, the Court adopts the Magistrate Judge's analysis with respect to Plaintiff's claim of

2

a hostile work environment based on his age as well as the Magistrate Judge's recommendation as to Plaintiff's claim of retaliation.

With respect to the Magistrate Judge's recommendation that summary judgment be granted on the Plaintiff's claim of disparate treatment, while the Court adopts the Magistrate Judge's recommendation and supporting analysis, it is nonetheless the Court's view that additional comment is necessary in light of the Plaintiff's 35 years of employment with Laminations, Inc. and the state of the record that was presented to the Magistrate Judge and now to this Court for consideration under the applicable law.

When William Wesley received the June 3, 2014 letter from Laminations, Inc. President, Michael Lynch, (Doc. 43-8), notifying him that SIMONA AMERICA, INC. had acquired Laminations, Inc. and was combining Laminations, Inc.'s facility in Archbald, PA, with another facility in Hazleton, PA, which was to be closed, and that his position had been eliminated as part of this restructuring, he was 57 years old.

The June 3, 2014 Notice informed the Plaintiff that "his last day of employment with Laminations, Inc. will be specified at a later date." (*Id.*). Yet, as the Magistrate Judge's R&R notes, "Wesley continued working at Simona until May of 2015, when he passed out at work and suffered a head injury which left him unable to work for a period of months. (Doc. 43-6.)" (Doc. 54, at 6). The Plaintiff filed the instant lawsuit on June 9, 2015 and it was not until December 28, 2015 when Defendant Simona notified the Plaintiff that it was terminating his position.

Notwithstanding the passage of time between the June 3, 2014 notice that Plaintiff's

job would be eliminated and his actual termination on December 28, 2015, it is this Court's

view that the Defendant took an adverse employment action against the Plaintiff on June 3,

2014. Further, there is no evidence that Plaintiff was not qualified for the position he held,

i.e., scrap saw operator. These facts present three of the four elements necessary for a

finding of a *prima facie* case of age discrimination. *See Anderson v. Consolidated Rail*

*Corp.*, 297 F.3d 242, 249 (3d Cir. 2002).

As to the fourth element of a *prima facie* case of age discrimination, the Court in

*Consolidated Rail* explained:

> [B]ecause ADEA is not a bumping statute, as the plaintiffs concede, the
> plaintiffs must show that the employer retained a similarly situated
> employee. Were we to hold otherwise, we would be construing ADEA as
> guaranteeing a protected employee a job at the expense of a sufficiently
> younger employee. Thus, to present a *prima facie* case raising an inference
> of age discrimination in a reduction in force situation, the plaintiff must
> show, as part of the fourth element, that the employer retained someone
> similarly situated to him who was sufficiently younger.

*Id.* at 250.

Here, the Plaintiff has not presented evidence as to the identity, skillsets, age, or any

other work-related qualification of those employees who were retained by Simona while the

Plaintiff was marked for termination. Despite this Court's Order extending fact discovery

from its original completion date of April 1, 2016 (Doc. 19) to a completion date of August

29, 2016 (Doc. 38), the record does not contain a list of the employees retained, their ages,

skillsets, years of service, work-related qualifications or any other evidence that would

4

satisfy the fourth element of the *prima facie* case as mandated by *Consolidated Rail*, that "the employer retained someone similarly situated to [the plaintiff] who was sufficiently younger," *Consolidated Rail Corp.*, 297 F.3d at 250. The record shows that "Wesley was one of 40 workers terminated due to a business consolidation and reduction in force." (Doc. 54, at 28). But, the record does not provide any information about the employees retained as stated above.

The Magistrate Judge noted that the Plaintiff submitted the testimony of a single witness, Glenn Burge, who was terminated by Simona in January of 2015 from his position as a production manager (Doc. 52-4, at 10:10-20; 13:4-5). Mr. Burge identified four other individuals who were terminated as part of the consolidation and reduction in force undertaken by Simona. He identified Art Botjer, Jim Gavigan, William Durkin and Jack Chalker. (*Id.* at 12:1-16). He testified that Botjer was a maintenance man; that Gavigan was the "CFO"; that Durkin was the "Controller"; and that Chalker "worked in the Accounting Department." (*Id.* at 15:4-22). When asked what the Plaintiff's job at the Plant was, Burge responded: "At that time, Bill worked on the saw, cleaning scrap." (*Id.* at 16:16-19).

Burge also testified that the Plaintiff was not the only person who operated the scrap saw and that there were two other persons who operated the saw, although he could not remember "either one of them." (*Id.* at 17:1-8). Burge testified that none of these individuals were "let go" around the time that he was terminated. (*Id.* at 17:9-11). He also testified that

he was not aware of other persons "that had floor jobs in the plant that were let go." (*Id.* at 17:12-14).

Burge's testimony does not create a genuine dispute of fact as to whether Simona retained someone similarly situated to the Plaintiff who was sufficiently younger. What it does do, however, is underscore the Plaintiff's failure to adduce evidence showing that, as to the other employees who have floor jobs in the Plant, that any of them were similarly situated to the Plaintiff, were retained by Simona, and were sufficiently younger than Plaintiff to complete the fourth element of the *prima facie* case requirements. Plaintiff in this case did not present enough evidence to establish a *prima facie* case of age discrimination based on disparate treatment.

Moreover, even if Plaintiff had done so, Defendant Simona met its burden of production, coming forward with a legitimate, non-discriminatory reason for the Plaintiff's job elimination. Former President and co-owner of Laminations, Inc., Michael Lynch, when asked how the persons who were informed that they were to lose their job through job elimination were selected, testified:

Q. How did you go about selecting the people that were told that they might be losing their job?
...

A. Yeah. So it depended on what department they were in. So I would meet with the department heads. So like, for the operations, I would meet with Bill Minogue. For you know, accounting, I would meet with Michel Schlick, who was the Simona Controller. For you know, some of the departments I'd meet with Michael Schmitz. And you know, we would go through and we would try to collectively identify, you know, what positions we needed filled,

6

and who were the employees who had the skillsets to fill them. And you know, we would try to determine, you know, who are the employees that we felt that we needed. And if there were any employees that we felt like there was a possibility that we may not need them, then we were giving them notice that they would potentially be laid off, or that they would be laid off. I think the case of some of the other departments – it was more clear than some of the operational manufacturing positions, warehousing, production, and that sort, so - .

Q.      Well, with respect to Mr. Wesley specifically, do you know what the reason was that he might not be needed anymore, given that he had worked for the company for about 35 years. . . . .

A.      We determined that Billy would have been one of the employees that we may not need. And you know, at this point right now, I don't remember exactly, you know, why or how we came to that, you know, that decision. I do recall that Billy's skillsets were less than some of the other people. He didn't have experience running the equipment. I don't think he was familiar with the computer systems. You know, there are things like that that made it – some of the positions that we were trying to fill, Billy wasn't capable or able to, you know, to fill them, so --.

Q.      Well you said some of the skillsets. One of the things you just said was the computer; is that right?

A.      Yeah, I did. I don't recall that Billy had, you know, experience or understanding of how to do that.

(Doc. 52-11 at 26:15-25; 27:1-21; 28:8-24).

        In response to this explanation of why the Plaintiff was selected for job elimination

and ultimate termination, the Plaintiff came forward with no evidence of record to establish

the existence of a genuine dispute for trial. That is to say, the Plaintiff came forward with no

evidence of pretext.

        Proof of pretext does not have to include evidence of discrimination, but
        rather "[i]n appropriate circumstances, the trier of fact can reasonably infer

from the falsity of the explanation that the employer is dissembling to cover up
a discriminatory motive".

*Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (citing *Reeves v. Sanderson*

*Plumbing Prods, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

    The Court in *Kautz* added:

> Although *Reeves* makes clear that we may not require affirmative evidence of
> discrimination in addition to proof of pretext, it does not change our standard
> for proving pretext which "places a difficult burden on the Plaintiff." *Fuentes v.*
> *Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). In order to avoid summary
> judgment, *Fuentes* requires a plaintiff to put forward "such weaknesses,
> implausibilities, inconsistencies, incoherencies, or contradictions in the
> employer's proffered legitimate reasons for its action that a reasonable
> factfinder *could* find them unworthy of credence." *Id.* (internal quotation and
> citation omitted; emphasis in the original).

*Id.*

    The Court in *Kautz* continued:

> *Fuentes* further explains that "to avoid summary judgment, the plaintiff's
> evidence rebutting the employer's proffered legitimate reasons must allow a
> factfinder reasonably to infer that *each* of the employer's proffered non-
> discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did
> not actually motivate the employment action."

*Id.* (emphasis in the original).

    Here, the Plaintiff has come forward with no evidence from which the falsity of the

explanation offered by the testimony of Michael Lynch can be reasonably inferred, or

evidence showing his testimony was a *post hoc* fabrication. Nor has the Plaintiff put forward,

in the language of *Fuentes*, such "weaknesses, implausibilities, inconsistencies,

incoherencies or contradictions in the employer's proffered legitimate reasons for its act that

a reasonable fact-finder could rationally find them unworthy of credence." *Kautz*, 412 F.3d at

467 (quoting *Fuentes*, 32 F.3d 759 at 765). In specific terms, the Plaintiff failed to come

forward with evidence showing that the evaluating process by which Simona determined

that Wesley's job would be eliminated while other employees were retained lacked any

relationship to the Plaintiff's skillset or qualifications for the jobs remaining after the

consolidation of the Archbald and Hazleton operations by Simona.

> An employer may not use evaluating criteria which lacks any relationship at
> all to the performance of the employee being evaluated because to do so
> would be inconsistent with and contradictory to the employer's stated
> purpose. *See, Fuentes*, 32 F.3d at 765. Absent this type of violation of the
> *Fuentes* standard, we will not second guess the method an employer uses to
> evaluate its employees.

*Kautz*, 412 F.3d at 468.

It was incumbent upon the Plaintiff to point to other Plant floor employees who were

retained whose skillsets or qualifications were similar to those of the Plaintiff and who were

younger than the Plaintiff. This the Plaintiff failed to do. Had he done so, a genuine dispute

of fact for trial would have been created. But absent compliance with the requirements for

showing a *prima facie* case of discrimination and, thereafter, that the employer's "legitimate

non-discriminatory reason" was a pretext for unlawful age discrimination, Plaintiff may not

avoid summary judgment against him on this claim.

The Objections of the Plaintiff (Doc. 57) are unspecific in nature and do not marshal

the evidence in any way sufficient to allow this Court to decline to adopt any part of the

Magistrate Judge's Report and Recommendation.  Further, the Plaintiff did not submit a

9

brief in support of his objections, choosing instead to incorporate by reference his brief in opposition to the Defendant's Motion for Summary Judgment and "his Statement of Facts" (*Id.* at 1). This is a violation of the Middle District of Pennsylvania Local Rule 7.8, prohibiting briefs from incorporating by reference all or any portion of any other brief and of Local Rule 72.3 which requires a party to "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."

### III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Report and Recommendation of the Magistrate Judge, summary judgment will be granted to the Defendant.[1]

A separate Order follows.

Robert D. Mariani
United States District Judge

---

[1] Summary judgment is likewise to be entered on Plaintiff's claims under the PHRA for the reasons set forth herein and in the Magistrate Judge's Report and Recommendation in accordance with the well established case law suggesting that the PHRA should be construed in a manner consonant with the case law developed under the ADEA. *See, Gomez v. Allegheny Health Servs, Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995).

10